Good morning, your honors. I represent the petitioner in this case and who's seeking review of the board's final order of removal in which the board affirmed the immigration judge's determination that he did not qualify for asylum, withholding of removal, and relief under the Convention Against Torture. In short, the board upheld the immigration judge's adverse credibility determination and also found that even if the petitioner was credible, he still did not experience persecution in his native country of India and there was no well-founded fear of future persecution. The immigration judge's adverse credibility determination is not supported by substantial evidence and immigration judge's post-persecution analysis is also flawed. As to credibility, the immigration judge was affirmed by the board on two grounds. The first ground related to the treatment the petitioner's father received in India after he was arrested. The petitioner had written in his declaration that his father was tortured, whereas in court, he testified that he was beaten but was not physically harmed. The immigration judge found that to be an inconsistency that went to the heart of the claim. Kennedy, at one point in his testimony, he didn't say he was beaten. At another point, I think he did, if I recall correctly, do you disagree with that, that the first time, I think on cross, he said that he was, well, beaten but not injured. And direct, as I recall, he said that he was not physically harmed. That's true, Your Honor. That's correct. However, that he was not physically harmed, he explained on cross-examination and even the board acknowledged in its order that he did explain that he was physically harmed, but he meant by physical harm was that there were no marks on his body. And that's the issue, Your Honor. The fact that whether he was, whether the father was tortured or he was beaten, the word torture is a very broad concept. I mean, it can be interpreted as physical as well as non-physical harm. A person can be tortured and not have any physical harm. In this case, if you look at the record, the judge interpreted the term torture as physical harm. Let's assume that we find the adverse credibility determination to be less than well founded. Let's move on from that. What's your client's persecution? Well, Your Honor — Keeping in mind that this was, what, 21 years ago? Yes. Well, Your Honor — I'm waiting for you to start a sentence with, my client's persecution was. Well, yes. Complete the sentence. Your Honor, he was persecuted on account of his political opinion. How was he persecuted? Well, first of all, if you look at the totality of his experience, he was arrested once. He was beaten. He was warned that if he continued to take part in those activities, that his life would not be spared. This was during the time of an insurgency where young men such as my client were treated and sometimes killed in fabricated encounters by the security forces. And three years later, when he did take part in a political activity, his house was raided. He was forced to flee the country. Now, while it's true that he was not physically harmed during the second encounter, but that's the issue. The concept of persecution, as defined by this court, as well as all the courts, is much broader than physical harm. Now, if a person, for example, people who fled, let's see, Nazi Germany, before they were arrested and executed by the Nazis, for example, they are just as entitled to asylum as people who were caught and then escaped, perhaps. So the concept of this concept that this court has adopted is much broader than that. And we believe that immigration judge did not properly apply this court's standard. The two cases cited by the immigration judge in this case, both those cases are not applicable here. In those cases, they were brief detentions, and then the petitioners in those cases left the country under no threat from the government or from someone else. So this case is very broad in these cases. Now, I'd like to come back to the point that, now, this was 21 years ago. Now, the reason why, if the immigration judge erred on the post-persecution analysis, this case should go back is because, under federal regulation, an alien who suffered post-persecution is entitled to a rebuttable presumption of future persecution, which the government can rebut under the preponderance of evidence test by showing that there has been a change in country conditions, or the petitioner could relocate reasonably under all those factors. And even if the government is able to do that, a person who suffered post-harm or persecution is entitled to something called a humanitarian asylum based on other serious harm. So the fact that the petitioner has lived here for 21 years, he has a family here, he may still have the other serious harm, which, of course, this court cannot rule on because it can't engage in fact-finding. So what it comes down to is this. If petitioner was credible or immigration judge's post-persecution analysis was also incorrect, the case has to be remanded because whether he has a well-founded future of persecution in India depends on those factors. And we believe that's why this petition for review should be granted, because this court cannot decide well-founded fear without those errors being committed by the agency. If there's no other questions, I think I'll just save my time for rebuttal. Thank you. May it please the Court. Roseanne Perry on behalf of the Attorney General. The issue before the Court is whether substantial evidence supports the agency's determinations that, one, petitioner is not credible, two, petitioner failed to establish past persecution, and three, petitioner failed to establish that he has a well-founded fear of future persecution. This is pre-real ID, isn't it? Yes, it is. So while minor inconsistencies, you know, cannot form the basis for adverse credibility, the here, in this case, there are major inconsistencies that go to the father. With regard to the father's May 19th ---- Inconsistencies relate to the father, correct? Yes. And to the inconsistency dealing with Hawara, the guy who escaped and then was used as a pretext to arrest or re-arrest Sikhs, according to the petitioner. With regard to the father's arrest in 1993, as Petitioner's Counsel stated, in declaration he said he was tortured, the father was tortured. But on direct, he said he was not physically harmed at all. On cross-examination, he said he was physically harmed and then ---- but he didn't suffer any injuries. That's a clear ---- those are clear inconsistencies in this case. To go from torture to being physically, not physically harmed, and I think that he stated it was in 2006 that he wasn't physically harmed, and then in May of 2010, I believe that he was physically harmed but not beaten, so ---- Waterboarding is torture, isn't it? I'm not asking you to state that for the purposes of the position of the Department of Justice. It is possible to torture someone without them being physically harmed, isn't it? Correct. Mental harm is ---- can be torture. But he hasn't stated that he was ---- Deprivation, that kind of thing, yeah? I'm sorry? Sleep deprivation. Exactly. It could be possibly torture. But he hasn't indicated or said anything about that in this case. Let's push the father's situation aside and focus on the Petitioner's claims of persecution. Did the I.J. find any adverse credibility findings with regard to those descriptions? He didn't rely on those descriptions, or she didn't rely on those instances where in 1989 he was harmed. So as we have the case now, the Petitioner's testimony with regard to his own treatment stands as credible? Well, yes. It would stand as credible. Unless you can transfer adverse credibility from one set of facts to another. There's some evidence that ---- Is that hesitation? Yeah. There's some evidence that the I.J. did discuss his previous asylum declaration where he stated that he wasn't credible with regard to ---- but the I.J. didn't rely on it in this decision, no. What does the record tell us with regard to the treatment of Sikhs today? According to the record, Sikhs are not ---- well, first, Sikhs are the majority in Punjab where the Petitioner's from. While they're a minority in India, they're a majority in Punjab. The President of India is a Sikh, isn't he? The Prime Minister? Yeah, the Prime Minister. Yes. Singh is a Sikh, yes. And I believe the Chief Minister in Punjab is also a Sikh. They can ---- the record says they can internally relocate without issue. What's the latest country report that's part of the record? I believe it's 2000 ---- 2009 Human Rights Report. That doesn't discuss the treatment of Sikhs that they would be harmed or that they're being harmed right now. There is a response to info requests that USCIS provided, and it does say that there have been significant improvements in human rights for Sikhs in Punjab. If the 2014 or 15 country report were part of the record, would it show a different situation with regard to mistreatment of Sikhs? I'm not sure, Your Honor. That's not part of the record, and what we have to consider here is the record. We can't go outside of the record. The country report that is part of the record indicates that Sikhs are being mistreated. No. The country report ---- They're not. They're not being mistreated. According to ---- I didn't hear you correctly. Oh, okay. Yes. Thank you. Thank you. So, yes, that was a March 2009 response to information request, and then the 2008 international or 2009 Human Rights Report does not mention any mistreatment of Sikhs. Do you think that the inconsistencies that the immigration judge found might be explained by the fact that he first filed a petition in 1993. He filed another one in 2002. Nothing was done on the first one. Then he has direct examination in 2006 and cross-examination in 2010. I mean, that seems ---- Would that be a reason to say, well, maybe just the passage of time means he doesn't remember things quite as well as if he had been given the hearing immediately? I mean, it's torture. You would remember, you would think he would remember that his father was tortured versus no physical harm versus now he was physically harmed, but he didn't suffer any injuries. It's not something that I believe that you would forget, like in the passage, over the passage of time. That's, those are drastic inconsistencies. He wasn't like saying, oh, he was tortured first, but then, and direct, he was physically harmed, but, you know, the severity of his injuries weren't, his injuries weren't severe. He went from his dad was tortured to he was not physically harmed to he was physically harmed, but he didn't suffer injuries. Moving on to the past persecution, to further, to discuss his past persecution claim, he was not significantly harmed in 1989. He was, he said he was slapped a few times and his arm was twisted for six or seven minutes, and then he said his dad was abused for another eight minutes. When you compare it to Prasad and Gu, his case, they're analogous, as the case, in those cases, I believe that they, it was probably more egregious in those cases, the treatment that they suffered. I believe they were detained for longer and they were physically abused even more. And he didn't require any medical treatment, and he lived for, in India for another four years without harm before he, he supposedly participated in this rally in 1993. And he stated, a petitioner's counsel stated that his house was raided in 1993, but I don't even believe that the petitioner was there. And it, it looks from like the record that it was his father that was the main target and not the petitioner himself. With regard to the rebuttable presumption that he has a well-founded fear, the IJ, which he didn't, he didn't address that in his brief. He waived that in his brief. But in any case, the IJ found that there was no, he could internally relocate in Punjab or in India without trouble. And with regard to the humanitarian asylum claim, he didn't raise that before the board or before the agency. So that's not before the court. I see my time's almost up. If there are no further questions. Thank you. In conclusion, the government would ask that the court deny the petition for review. Thank you, Your Honors. Your Honor, I'd just like to point out that this case is not about the fear of harm that a member of the Sikh community in India fears. This is not a Sikh asylum claim. He's not claiming harm that he's a Sikh. He's claiming asylum and he fears future persecution on account of the fact that he, that the, that law enforcement and the police thinks he's a militant who may have been taking part in the killing of Sikhs and the Prime Minister of India is a Sikh and, or that there are, you know, that the main term insurgency or the main insurgency in India has, you know, has been done, has finished or ended. And secondly, Your Honor, the concept of persecution is a very fluid concept. It's not like a checklist that, oh, you have to be physically harmed so many times, you have to be kicked so many times, you have to be tortured like this. You have to look at the totality of the circumstances. You have to look at under what context this thing happened. I think that fear of harm itself can account to persecution, especially in, during a civil war. The State Department reports from 1995 onwards, and even now, even the new reports say that the Indian government engaged in, engages in extrajudicial killings of militants, suspected militants, all over the country. So this issue is not about his fear of persecution because he's a Sikh. This issue is more about his fear of persecution on account of his imputed political opinion with Sikh militants. And the fact that the father is not harmed in India has no relevance to this, has some relevance, but not a whole lot. If anything, the police has more to suspect that a young man who lived at home is no longer living here, and the father, they know what the father is doing, but they don't know what he's doing. So based on the totality of all the facts here, I believe that this case should be remanded because immigration judge erred on the post-persecution claim, and this court has limited fact-finding authority. It can't even take judicial notice in most cases. So on account, if the immigration judge erred on that part, post-persecution, and credibility is not at stake, then the case should be remanded to the board for additional fact-finding so they can apply the proper standard and then determine whether the government, if they do find past harm, past persecution, whether the government can rebut the presumption of future persecution. Thank you. If there's no other questions, I think we're done.
judges: Molloy, Reinhardt, Hawkins